UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH ESTEY, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>        -v.-<br><br>MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, JILL K. CONWAY, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, DAVID K. NEWBIGGING, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O. ROSSOTTI, LOUIS DIMARIA, PETER STINGI and JOHN AND JANE DOES 1-20,<br><br>                    Defendants. | Civil Action No.: 07-CV-10268 (DC) |

[additional captions follow]

**PLAINTIFFS GIDARO AND DONLON'S REPLY MEMORANDUM OF LAW
IN FURTEHR SUPPORT OF MOTION FOR INTERIM LEAD COUNSEL**

| | |
|---|---|
| **MARY GIDARO, individually and on behalf of all others similarly situated,**<br><br>                        **Plaintiff,**<br><br>       **-v.-**<br><br>**MERRILL LYNCH & CO., INC.; STAN O'NEAL; LOU DIMARIA; INVESTMENT COMMITTEE OF THE MERRILL LYNCH SAVINGS AND INVESTMENT PLAN; ADMINISTRATIVE COMMITTEE OF THE MERRILL LYNCH SAVINGS AND INVESTMENT PLAN and JOHN DOES 1-30,**<br><br>                        **Defendants.** | **Civil Action No.: 07-CV-10273 (LBS)** |

**CHRISTINE DONLON, on Behalf of All Others Similarly Situated,**

                    **Plaintiff,**

       **-v.-**

**MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, JILL K. CONWAY, ALBERTO CRIBIORE, LOUIS DIMARIA, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O. ROSSOTTI, JOHN DOES 1-20 (BEING CURRENT AND FORMER MEMBERS OF THE BENEFITS ADMINISTRATION COMMITTEE OF THE MERRILL LYNCH & CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN) and JOHN DOES 21-40 (BEING CURRENT AND FORMER MEMBERS OF THE INVESTMENT COMMITTEE OF THE MERRILL LYNCH & CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN),**

                    **Defendants.**

**Civil Action No.: 07-CV-10661 (LBS)**

TARA MOORE, individually and on behalf
of all others similarly situated,

                                **Plaintiff,**

          **-v.-**

MERRILL LYNCH & CO., INC.,
MERRILL LYNCH & CO., INC. PLAN
"INVESTMENT COMMITTEE,"
MERRILL LYNCH & CO., INC. PLAN
ADMINISTRATIVE COMMITTEE,
MERRILL LYNCH & CO., INC.
MANAGEMENT DEVELOPMENT AND
COMPENSATION COMMITTEE, LOUIS
DIMARIA, E. STANLEY O'NEAL,
ALBERTO CRIBIORE, ARMANDO M.
CODINA, VIRGIS W. COLBERT, JOHN D.
FINNEGAN, AULANA L. PETERS and
JOHN DOES 1-10,

                                **Defendants.**

Civil Action No.: 07-CV-10398 (DC)

GREGORY YASHGUR, individually and on behalf of all others similarly situated,

               Plaintiff,

       -v.-

MERRILL LYNCH & CO., INC., ADMINISTRATIVE COMMITTEE OF THE MERRILL LYNCH & CO., INC. 401K SAVINGS AND INVESTMENT PLAN, JOHN D. FINNEGAN, JUDITH JONAS MAYHEW, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O. ROSSITTI, LOUIS DIMARIA, STAN O'NEAL, ALBERTO CRIBIORE, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT and JOHN DOES,

               Defendants.

Civil Action No.: 07-CV-10569 (JSR)

---

CARL ESPOSITO, individually and on behalf of all others similarly situated,

               Plaintiff,

       -v.-

MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, JILL K. CONWAY, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, DAVID K. NEWBIGGING, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O. ROSSOTTI, LOUIS DIMARIA, PETER STINGI and JOHN AND JANE DOES 1-20,

               Defendants.

Civil Action No.: 07-CV-10687 (JGK)

SEAN SHAUGHNESSEY, individually and
on behalf of all others similarly situated,

                    **Plaintiff,**

        **-v.-**

MERRILL LYNCH & CO., INC.,
MERRILL LYNCH & CO., INC.
INVESTMENT COMMITTEE,
MANAGEMENT DEVELOPMENT AND
COMPENSATION COMMITTEE OF THE
MERRILL LYNCH & CO., INC. BOARD
OF DIRECTORS, THE MERRILL LYNCH
TRUST COMPANY, FSB,
ADMINISTRATIVE COMMITTEE OF
THE MERRILL LUNCH & CO., INC. 401K
SAVINGS AND INVESTMENT PLAN,
LOUIS DIMARIA, ARMANDO M.
CODINA, VIRGIS W. COLBERT,
ALBERTO CRIBIORE, JOHN D.
FINNEGAN, AULANA L. PETERS and
JOHN DOES 1-40,

                 **Defendants.**

Civil Action No.: 07-CV-10710 (GEL)

BARBARA BOLAND, individually and on
behalf of all others similarly situated,

              Plaintiff,

    -v.-

MERRILL LYNCH & CO., INC., E.
STANLEY O'NEAL, CAROL T. CHRIST,
ARMANDO M. CODINA, VIRGIS W.
COLBERT, JILL K. CONWAY, ALBERTO
CRIBIORE, JOHN D. FINNEGAN, JUDITH
MAYHEW JONAS, DAVID K.
NEWBIGGING, AULANA L. PETERS,
JOSEPH W. PRUEHER, ANN N. REESE,
CHARLES O. ROSSOTTI and JOHN AND
JANE DOES 1-20,

              Defendants.

Civil Action No.: 07-CV-11054 (MGC)

| | |
|---|---|
| **FRANCIS LEE SUMMERS, III, individually and on behalf of all others similarly situated,** | **Civil Action No.: 07-CV-11615 (UA)** |
| **Plaintiff,** | |
| -v.- | |
| **MERRILL LYNCH & CO., INC., *ET AL.*,** | |
| **Defendants.** | |

| | |
|---|---|
| **JAMES EASTMAN, individually and on behalf of all others similarly situated,** | **Civil Action No.: 08-CV-00058 (LBS)** |
| **Plaintiff,** | |
| -v.- | |
| **MERRILL LYNCH & CO., INC., *ET AL.*,** | |
| **Defendants.** | |

Plaintiffs Mary Gidaro and Christine Donlon (together, the "Gidaro Plaintiffs"), by their counsel, respectfully submit this memorandum of law in further support of their motion for appointment of Interim Co-Lead Counsel and in opposition to the motions of (1) Keller Rohrback and Cohen Milstein Hausfeld & Toll (together, their application is referred to herein as the "Keller/Cohen Motion"), counsel in the *Esposito* case, and (2) Stull Stull & Brody, counsel in the *Yashgur* case, for appointment of lead counsel. As set forth below, Shalov Stone Bonner & Rocco LLP ("SSBR") and Harwood Feffer LLP ("Harwood Feffer") should be appointed Interim Co-Lead Counsel for plaintiffs in a consolidated Merrill Lynch ERISA litigation.

*REPLY ARGUMENT*

Gidaro Plaintiffs respectfully submit that the choice of the SSBR/Harwood Feffer structure represents the best option available for several reasons. Of the three movants seeking the leadership position in this case, only one – the SSBR/Harwood Feffer group – has taken steps to coordinate other firms and cases into a well-organized structure, securing the support of five other law firms at present. The SSBR/Harwood Feffer structure eliminates the unnecessary burden of appointing firms from distant parts of the country as lead counsel in this case. Furthermore, the SSBR/Harwood Feffer structure is the only one that represents a current employee of Merrill Lynch, *i.e.*, a person typical of and with the same interests as the majority of the proposed class. These factors weigh in favor of the SSBR/Harwood Feffer structure.

In contrast, the Keller/Cohen motion rests largely on the resumes of those firms, without offering any distinguishing features beyond their credentials and supporting testimonials from certain friends of those firms. Although these movants also trumpet a claim of having done more work than other firms on this case, these assertions are contested and ring hollow. Plaintiff Yashgur and his counsel have not filed any responsive documents suggesting why they should be

- 1 -

granted the leadership position, but instead he appears only to have filed a "placemarker" motion.

In the final analysis, only the SSBR/Harwood Feffer group offers reasons why their proposed Co-Lead Plaintiff and Co-Lead Counsel structure is the best. Those reasons have not been rebutted, and we respectfully submit that the SSBR/Harwood Feffer motion should be granted.

As the Gidaro Plaintiffs previously submitted, the professional qualifications of the various applicants are beyond dispute. All the applicants are well-qualified and capable of meeting the challenges of this case and protecting the proposed class. The Keller/Cohen applicants nevertheless seek to argue that they are the "best" because they contend that their experience is "deeper." To bolster this position, they submit a declaration from a professor at Yale Law School who opines that experience is the most important factor in the selection of lead counsel, but who provides no analysis beyond that other than to provide a testimonial concerning his respect for the Keller Rohrback firm. Similarly, these applicants have submitted a declaration from an attorney with the American Association of Retired People (AARP) who testifies to the worthiness of the Cohen Milstein firm. To the extent either of these declarations is intended to serve as some sort of expert testimony (it appears they are offered in part to provide analysis concerning which factors are most important), these declarations are improper. *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 69 (S.D.N.Y. 2001) ("[L]awyers make arguments, judges write legal opinions -- and there is no such thing as an expert opinion when it comes to interpreting a statute unless the opinion belongs to a court"); *see also* Maury R. Olicker, *The Admissibility of Expert Witness Testimony*, 42 U. Miami L. Rev. 831, 862 (1988) ("This simple proposition is so basic that it scarcely needs repeating.")

- 2 -

These declarations are equally improper to the extent offered as testimonials to the quality of the attorneys at Keller Rohrback and Cohen Milstein. Although the declarants appear to be personally acquainted with the attorneys about whom they are opining, they essentially admit that they are not in fact clients of these firms and thus are not the consumers of these firms' services. They also do not tell us anything about how much they may have been paid by these firms in the past as experts or even if these declarations were gratuitous or paid for here. Absent from the offering is any testimonial from any past client. Especially since the quality and qualifications of the various firms are not really in dispute, this form of backslapping is irrelevant.

The Keller/Cohen opposition to the Gidaro Plaintiffs' motion asks the court to compare initial complaints from the various applicants. It is contended in the Keller/Cohen opposition brief that the complaints of plaintiffs Esposito, Boland and Molin (together, the "Esposito Plaintiffs") are more detailed and that this somehow demonstrates them to be the better choice for interim lead counsel in the case. *Esposito* Plaintiffs' Opposition to Plaintiffs Gidaro and Donlon's Joint Amended Motion at 5 (brief filed February 15, 2008). The fact that certain plaintiffs may have submitted longer complaints, however, does little to advance the Esposito Plaintiffs' cause. As they surely must know, because the claims asserted in this action do not sound in fraud, it is Rule 8, Fed. R. Civ. P., rather than Rule 9(b), Fed. R. Civ. P., that governs the pleadings in this litigation. Extensive surplusage could very well subject the complaint to a Rule 8 attack, and needlessly burdens the Court with overly lengthy pleadings.

There is no contention that there is any defect with the *Gidaro* or *Donlon* complaints – indeed, the *Gidaro* complaint appears to have served as a template for some of the others –

instead the Keller/Cohen papers appear to make the arbitrary assertion that the more verbose complaint must be the "better one." As with the resumes, the argument is meritless.

In response to an earlier argument raised by plaintiff Gidaro, the Keller/Cohen opposition brief makes much of the purported irrelevance of any individual class member's losses in evaluating who should be a lead plaintiff. This argument avoids the central point – that the lead plaintiffs in this case should be individuals with a significant stake in the case. We never contended that the model applicable in securities cases controlled here, but rather that it was instructive because it sought to place control of a case into the hands of persons with a genuine and substantial interest. Here, both the undersigned applicants and the Keller/Cohen group represent plaintiffs with stakes in the hundreds of thousands of dollars, and accordingly, we believe that this has become a nonfactor at least as between these applicants. Plaintiff Yashgur has not provided any information about the extent of his stake in this matter.

The position taken by the Keller/Cohen papers is also based on an error. In Footnote 7 of the Keller Cohen opposition brief, the Keller/Cohen movants criticize SSBR that "SSBR appears to have been unaware that ERISA requires that actions for monetary losses caused by breaches of fiduciary duties be brought on behalf of the Plan and not on behalf of any one individual." *Esposito* Plaintiffs' Opposition to Plaintiffs Gidaro and Donlon's Joint Amended Motion at 11 n.7 (brief filed February 15, 2008). In their eagerness to attack competing counsel, however, the Keller/Cohen movants failed to acknowledge that this was in fact an issue to be affected by a decision in the case of *LaRue v. DeWolf, Boberg & Assocs.*, 552 U.S. ___ (2008) (copy attached hereto), which was pending when the Keller/Cohen brief was submitted and which this morning was decided in a manner contrary to the proposition asserted by the Keller/Cohen movants.

- 4 -

Accordingly, we respectfully submit that the unbecoming attempts at criticizing SSBR and/or

Harwood Feffer should be entirely rejected by the Court.

*CONCLUSION*

In summary, none of the arguments against the SSBR/Harwood Feffer proposed structure are availing. The SSBR/Harwood Feffer proposed structure represents the best proposal for interim lead counsel in this case for the many reasons outlined above and in the prior submissions herein, and we respectfully request that the Court grant their motion for consolidation and appointment of SSBR and Harwood Feffer as interim co-lead counsel for the class.

Dated: New York, New York
February 20, 2008

Respectfully submitted,

SHALOV STONE BONNER & ROCCO LLP

By: /s/ Ralph M. Stone
        Ralph M. Stone
               (rstone@lawssb.com)
        Susan M. Davies
               (sdavies@lawssb.com)
        Thomas G. Ciarlone, Jr.
               (tciarlone@lawssb.com)
        Amanda C. Scuder
               (ascuder@lawssb.com)

485 Seventh Avenue, Suite 1000
New York, New York 10018
Tel (212) 239-4340
Fax (212) 239-4310

*- and -*

Robert I. Harwood
        (rharwood@hfesq.com)
Samuel K. Rosen
        (srosen@hfesq.com)
HARWOOD FEFFER LLP
488 Madison Avenue
New York, New York 10022
Tel (212) 935-7400
Fax (212) 753-3630

*Proposed Interim Co-Lead Counsel for Plaintiffs*

- 6 -

Attachment

(Slip Opinion)          OCTOBER TERM, 2007                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LaRUE *v.* DeWOLFF, BOBERG & ASSOCIATES, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 06–856.   Argued November 26, 2007—Decided February 20, 2008

Petitioner, a participant in a defined contribution pension plan, alleged that the plan administrator's failure to follow petitioner's investment directions "depleted" his interest in the plan by approximately $150,000 and amounted to a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA). The District Court granted respondents judgment on the pleadings, and the Fourth Circuit affirmed. Relying on *Massachusetts Mutual Life Ins. Co.* v. *Russell,* 473 U. S. 134, the Circuit held that ERISA §502(a)(2) provides remedies only for entire plans, not for individuals.

*Held:* Although §502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, it does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. Section 502(a)(2) provides for suits to enforce the liability-creating provisions of §409, concerning breaches of fiduciary duties that harm plans. The principal statutory duties imposed by §409 relate to the proper management, administration, and investment of plan assets, with an eye toward ensuring that the benefits authorized by the plan are ultimately paid to plan participants. The misconduct that petitioner alleges falls squarely within that category, unlike the misconduct in *Russell.* There, the plaintiff received all of the benefits to which she was contractually entitled, but sought consequential damages arising from a delay in the processing of her claim. *Russell*'s emphasis on protecting the "entire plan" reflects the fact that the disability plan in *Russell,* as well as the typical pension plan at that time, promised participants a fixed benefit. Misconduct by such a plan's administrators will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of

2       LaRUE *v.* DeWOLFF, BOBERG & ASSOCIATES, INC.

Syllabus

default by the entire plan. For defined contribution plans, however, fiduciary misconduct need not threaten the entire plan's solvency to reduce benefits below the amount that participants would otherwise receive. Whether a fiduciary breach diminishes plan assets payable to all participants or only to particular individuals, it creates the kind of harms that concerned §409's draftsmen. Thus, *Russell's* "entire plan" references, which accurately reflect §409's operation in the defined benefit context, are beside the point in the defined contribution context. Pp. 4–8.

450 F. 3d 570, vacated and remanded.

STEVENS, J., delivered the opinion of the Court, in which SOUTER, GINSBURG, BREYER, and ALITO, JJ., joined. ROBERTS, C. J., filed an opinion concurring in part and concurring in the judgment, in which KENNEDY, J., joined. THOMAS, J., filed an opinion concurring in the judgment, in which SCALIA, J., joined.

Cite as: 552 U. S. ____ (2008)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–856

———————

## JAMES LARUE, PETITIONER *v.* DeWOLFF, BOBERG & ASSOCIATES, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[February 20, 2008]

JUSTICE STEVENS delivered the opinion of the Court.

In *Massachusetts Mut. Life Ins. Co.* v. *Russell,* 473 U. S. 134 (1985), we held that a participant in a disability plan that paid a fixed level of benefits could not bring suit under §502(a)(2) of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 891, 29 U. S. C. §1132(a)(2), to recover consequential damages arising from delay in the processing of her claim. In this case we consider whether that statutory provision authorizes a participant in a defined contribution pension plan to sue a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account.[1] Relying on our decision in *Russell,* the Court of Appeals for the

———————

[1] As its names imply, a "defined contribution plan" or "individual account plan" promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions. A "defined benefit plan," by contrast, generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation. See §§3(34)–(35), 29 U. S. C. §§1002(34)–(35); P. Schneider & B. Freedman, ERISA: A Comprehensive Guide §3.02 (2d ed. 2003).

2        LARUE *v.* DEWOLFF, BOBERG & ASSOCIATES, INC.

Opinion of the Court

Fourth Circuit held that §502(a)(2) "provides remedies only for entire plans, not for individuals. . . . Recovery under this subsection must 'inure[ ] to the benefit of the plan *as a whole*,' not to particular persons with rights under the plan."  450 F. 3d 570, 572–573 (2006) (quoting *Russell*, 473 U. S., at 140).  While language in our *Russell* opinion is consistent with that conclusion, the rationale for *Russell*'s holding supports the opposite result in this case.

I

Petitioner filed this action in 2004 against his former employer, DeWolff, Boberg & Associates (DeWolff), and the ERISA-regulated 401(k) retirement savings plan administered by DeWolff (Plan).  The Plan permits participants to direct the investment of their contributions in accordance with specified procedures and requirements. Petitioner alleged that in 2001 and 2002 he directed De-Wolff to make certain changes to the investments in his individual account, but DeWolff never carried out these directions.  Petitioner claimed that this omission "depleted" his interest in the Plan by approximately $150,000, and amounted to a breach of fiduciary duty under ERISA.  The complaint sought "'make-whole' or other equitable relief as allowed by [§502(a)(3)]," as well as "such other and further relief as the court deems just and proper."  Civil Action No. 2:04–1747–18 (D. S. C.), p. 4, 2 Record, Doc. 1.

Respondents filed a motion for judgment on the pleadings, arguing that the complaint was essentially a claim for monetary relief that is not recoverable under §502(a)(3).  Petitioner countered that he "d[id] not wish for the court to award him any money, but . . . simply want[ed] the plan to properly reflect that which would be his interest in the plan, but for the breach of fiduciary duty."  Reply to Defendants Motion to Dismiss, p. 7, 3 *id.,* Doc. 17.  The District Court concluded, however, that since

Opinion of the Court

respondents did not possess any disputed funds that rightly belonged to petitioner, he was seeking damages rather than equitable relief available under §502(a)(3). Assuming, *arguendo,* that respondents had beached a fiduciary duty, the District Court nonetheless granted their motion.

On appeal petitioner argued that he had a cognizable claim for relief under §§502(a)(2) and 502(a)(3) of ERISA. The Court of Appeals stated that petitioner had raised his §502(a)(2) argument for the first time on appeal, but nevertheless rejected it on the merits.

Section 502(a)(2) provides for suits to enforce the liability-creating provisions of §409, concerning breaches of fiduciary duties that harm plans.[2] The Court of Appeals cited language from our opinion in *Russell* suggesting that that these provisions "protect the entire plan, rather than the rights of an individual beneficiary." 473 U. S., at 142. It then characterized the remedy sought by petitioner as "personal" because he "desires recovery to be paid into his plan account, an instrument that exists specifically for his benefit," and concluded:

> "We are therefore skeptical that plaintiff's individual remedial interest can serve as a legitimate proxy for the plan in its entirety, as [§502(a)(2)] requires. To be sure, the recovery plaintiff seeks could be seen

---

[2] Section 409(a) provides:

"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of this Act." 88 Stat. 886, 29 U. S. C. §1109(a).

4    LaRUE *v.* DeWOLFF, BOBERG & ASSOCIATES, INC.

Opinion of the Court

as accruing to the plan in the narrow sense that it would be paid into plaintiff's plan *account*, which is part of the plan.  But such a view finds no license in the statutory text, and threatens to undermine the careful limitations Congress has placed on the scope of ERISA relief." 450 F. 3d, at 574.

The Court of Appeals also rejected petitioner's argument that the make-whole relief he sought was "equitable" within the meaning of §502(a)(3).  Although our grant of certiorari, 551 U. S. ___ (2007), encompassed the §502(a)(3) issue, we do not address it because we conclude that the Court of Appeals misread §502(a)(2).

II

As the case comes to us we must assume that respondents breached fiduciary obligations defined in §409(a), and that those breaches had an adverse impact on the value of the plan assets in petitioner's individual account.  Whether petitioner can prove those allegations and whether respondents may have valid defenses to the claim are matters not before us.[3]  Although the record does not reveal the relative size of petitioner's account, the legal issue under §502(a)(2) is the same whether his account includes 1% or 99% of the total assets in the plan.

As we explained in *Russell*, and in more detail in our later opinion in *Varity Corp.* v. *Howe,* 516 U. S. 489, 508–512 (1996), §502(a) of ERISA identifies six types of civil actions that may be brought by various parties.  The second, which is at issue in this case, authorizes the Secretary of Labor as well as plan participants, beneficiaries, and fiduciaries, to bring actions on behalf of a plan to

---

[3] For example, we do not decide whether petitioner made the alleged investment directions in accordance with the requirements specified by the Plan, whether he was required to exhaust remedies set forth in the Plan before seeking relief in federal court pursuant to §502(a)(2), or whether he asserted his rights in a timely fashion.

Opinion of the Court

recover for violations of the obligations defined in §409(a).
The principal statutory duties imposed on fiduciaries by
that section "relate to the proper management, admini-
stration, and investment of fund assets," with an eye
toward ensuring that "the benefits authorized by the plan"
are ultimately paid to participants and beneficiaries.
*Russell*, 473 U. S., at 142; see also *Varity*, 516 U. S., at
511–512 (noting that §409's fiduciary obligations "relat[e]
to the plan's financial integrity" and "reflec[t] a special
congressional concern about plan asset management").
The misconduct alleged by the petitioner in this case falls
squarely within that category.[4]

The misconduct alleged in *Russell*, by contrast, fell
outside this category.  The plaintiff in *Russell* received all
of the benefits to which she was contractually entitled, but
sought consequential damages arising from a delay in the
processing of her claim.  473 U. S., at 136–137.  In holding
that §502(a)(2) does not provide a remedy for this type of
injury, we stressed that the text of §409(a) characterizes
the relevant fiduciary relationship as one "with respect to
a plan," and repeatedly identifies the "plan" as the victim
of any fiduciary breach and the recipient of any relief.  See
*id.*, at 140.  The legislative history likewise revealed that
"the crucible of congressional concern was misuse and

---

[4]The record does not reveal whether the alleged $150,000 injury
represents a decline in the value of assets that DeWolff should have
sold or an increase in the value of assets that DeWolff should have
purchased.  Contrary to respondents' argument, however, §502(a)(2)
encompasses appropriate claims for "lost profits."  See Brief for Re-
spondents 12–13.  Under the common law of trusts, which informs our
interpretation of ERISA's fiduciary duties, see *Varity*, 516 U. S., at
496–497, trustees are "chargeable with . . . any profit which would have
accrued to the trust estate if there had been no breach of trust," includ-
ing profits forgone because the trustee "fails to purchase specific
property which it is his duty to purchase."  1 Restatement (Second)
Trusts §205, and Comment *i*, §211 (1957); see also 3 A. Scott, Law on
Trusts §§205, 211 (3d ed. 1967).

6    LaRUE *v.* DeWOLFF, BOBERG & ASSOCIATES, INC.

Opinion of the Court

mismanagement of plan assets by plan administrators."
*Id.*, at 141, n. 8. Finally, our review of ERISA as a whole
confirmed that §§502(a)(2) and 409 protect "the financial
integrity of the plan," *id.,* at 142, n. 9, whereas other
provisions specifically address claims for benefits. See *id.*,
at 143–144 (discussing §§502(a)(1)(B) and 503). We there-
fore concluded:

> "A fair contextual reading of the statute makes it
> abundantly clear that its draftsmen were primarily
> concerned with the possible misuse of plan assets, and
> with remedies that would protect the entire plan,
> rather than with the rights of an individual benefici-
> ary." *Id.*, at 142.

*Russell*'s emphasis on protecting the "entire plan" from
fiduciary misconduct reflects the former landscape of
employee benefit plans. That landscape has changed.

Defined contribution plans dominate the retirement
plan scene today.[5] In contrast, when ERISA was enacted,
and when *Russell* was decided, "the [defined benefit] plan
was the norm of American pension practice." J. Langbein,
S. Stabile, & B. Wolk, Pension and Employee Benefit Law
58 (4th ed. 2006); see also Zelinsky, The Defined Contribu-
tion Paradigm, 114 Yale L. J. 451, 471 (2004) (discussing
the "significant reversal of historic patterns under which
the traditional defined benefit plan was the dominant
paradigm for the provision of retirement income"). Unlike
the defined contribution plan in this case, the disability
plan at issue in *Russell* did not have individual accounts;

---

[5] See, *e.g.,* D. Rajnes, An Evolving Pension System: Trends in Defined
Benefit and Defined Contribution Plans, Employee Benefit Research
Institute (EBRI) Issue Brief No. 249 (Sept. 2002), http://www.ebri.org/
pdf/briefspdf/0902ib.pdf (all Internet materials as visited Jan. 28, 2008,
and available in Clerk of Court's case file); Facts from EBRI: Retire-
ment Trends in the United States Over the Past Quarter-Century
(June 2007), http://www.ebri.org/pdf/publications/facts/0607fact.pdf.

Opinion of the Court

it paid a fixed benefit based on a percentage of the employee's salary. See *Russell* v. *Massachusetts Mut. Life Ins. Co.*, 722 F. 2d 482, 486 (CA9 1983).

The "entire plan" language in *Russell* speaks to the impact of §409 on plans that pay defined benefits. Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan. It was that default risk that prompted Congress to require defined benefit plans (but not defined contribution plans) to satisfy complex minimum funding requirements, and to make premium payments to the Pension Benefit Guaranty Corporation for plan termination insurance. See Zelinsky, 114 Yale L. J., at 475–478.

For defined contribution plans, however, fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of §409. Consequently, our references to the "entire plan" in *Russell,* which accurately reflect the operation of §409 in the defined benefit context, are beside the point in the defined contribution context.

Other sections of ERISA confirm that the "entire plan" language from *Russell*, which appears nowhere in §409 or §502(a)(2), does not apply to defined contribution plans. Most significant is §404(c), which exempts fiduciaries from liability for losses caused by participants' exercise of control over assets in their individual accounts. See also 29 CFR §2550.404c–1 (2007). This provision would serve no real purpose if, as respondents argue, fiduciaries never had any liability for losses in an individual account.

We therefore hold that although §502(a)(2) does not provide a remedy for individual injuries distinct from

8    LaRUE v. DeWOLFF, BOBERG & ASSOCIATES, INC.

Opinion of the Court

plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.[6]

*It is so ordered.*

---

[6]After our grant of certiorari respondents filed a motion to dismiss the writ, contending that the case is moot because petitioner is no longer a participant in the Plan. While his withdrawal of funds from the Plan may have relevance to the proceedings on remand, we denied their motion because the case is not moot. A plan "participant," as defined by §3(7) of ERISA, 29 U. S. C. §1002(7), may include a former employee with a colorable claim for benefits. See, *e.g., Harzewski* v. *Guidant Corp.,* 489 F. 3d 799 (CA7 2007).

Opinion of ROBERTS, C. J.

# SUPREME COURT OF THE UNITED STATES

No. 06–856

## JAMES LARUE, PETITIONER v. DeWOLFF, BOBERG & ASSOCIATES, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[February 20, 2008]

CHIEF JUSTICE ROBERTS, with whom JUSTICE KENNEDY joins, concurring in part and concurring in the judgment.

In the decision below, the Fourth Circuit concluded that the loss to LaRue's individual plan account did not permit him to "serve as a legitimate proxy for the plan in its entirety," thus barring him from relief under §502(a)(2) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. §1132(a)(2). 450 F. 3d 570, 574 (2006). The Court today rejects that reasoning. See *ante*, at 4, 7–8. I agree with the Court that the Fourth Circuit's analysis was flawed, and join the Court's opinion to that extent.

The Court, however, goes on to conclude that §502(a)(2) does authorize recovery in cases such as the present one. See *ante*, at 7–8. It is not at all clear that this is true. LaRue's right to direct the investment of his contributions was a right granted and governed by the plan. See *ante*, at 2. In this action, he seeks the benefits that would otherwise be due him if, as alleged, the plan carried out his investment instruction. LaRue's claim, therefore, is a claim for benefits that turns on the application and interpretation of the plan terms, specifically those governing investment options and how to exercise them.

It is at least arguable that a claim of this nature properly lies only under §502(a)(1)(B) of ERISA. That provi-

2      LARUE *v.* DEWOLFF, BOBERG & ASSOCIATES, INC.

Opinion of ROBERTS, C. J.

sion allows a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U. S. C. §1132(a)(1)(B). It is difficult to imagine a more accurate description of LaRue's claim. And in fact claimants have filed suit under §502(a)(1)(B) alleging similar benefit denials in violation of plan terms. See, *e.g., Hess* v. *Reg-Ellen Machine Tool Corp.*, 423 F. 3d 653, 657 (CA7 2005) (allegation made under §502(a)(1)(B) that a plan administrator wrongfully denied instruction to move retirement funds from employer's stock to a diversified investment account).

If LaRue may bring his claim under §502(a)(1)(B), it is not clear that he may do so under §502(a)(2) as well. Section 502(a)(2) provides for "appropriate" relief. Construing the same term in a parallel ERISA provision, we have held that relief is not "appropriate" under §502(a)(3) if another provision, such as §502(a)(1)(B), offers an adequate remedy. See *Varity Corp.* v. *Howe*, 516 U. S. 489, 515 (1996). Applying the same rationale to an interpretation of "appropriate" in §502(a)(2) would accord with our usual preference for construing the "same terms [to] have the same meaning in different sections of the same statute," *Barnhill* v. *Johnson*, 503 U. S. 393, 406 (1992), and with the view that ERISA in particular is a "'comprehensive and reticulated statute'" with "carefully integrated civil enforcement provisions," *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134, 146 (1985) (quoting *Nachman Corp.* v. *Pension Benefit Guaranty Corporation*, 446 U. S. 359, 361 (1980)). In a variety of contexts, some Courts of Appeals have accordingly prevented plaintiffs from recasting what are in essence plan-derived benefit claims that should be brought under §502(a)(1)(B) as claims for fiduciary breaches under §502(a)(2). See, *e.g., Coyne & Delany Co.* v. *Blue Cross & Blue Shield of Va.*,

Opinion of ROBERTS, C. J.

*Inc.*, 102 F. 3d 712, 714 (CA4 1996). Other Courts of Appeals have disagreed with this approach. See, *e.g., Graden* v. *Conexant Systems Inc.*, 496 F. 3d 291, 301 (CA3 2007).

The significance of the distinction between a §502(a)(1)(B) claim and one under §502(a)(2) is not merely a matter of picking the right provision to cite in the complaint. Allowing a §502(a)(1)(B) action to be recast as one under §502(a)(2) might permit plaintiffs to circumvent safeguards for plan administrators that have developed under §502(a)(1)(B). Among these safeguards is the requirement, recognized by almost all the Courts of Appeals, see *Fallick* v. *Nationwide Mut. Ins. Co.*, 162 F. 3d 410, 418, n. 4 (CA6 1998) (citing cases), that a participant exhaust the administrative remedies mandated by ERISA §503, 29 U. S. C. §1133, before filing suit under §502(a)(1)(B).* Equally significant, this Court has held that ERISA plans may grant administrators and fiduciaries discretion in determining benefit eligibility and the meaning of plan terms, decisions that courts may review only for an abuse of discretion. *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101, 115 (1989).

These safeguards encourage employers and others to undertake the voluntary step of providing medical and retirement benefits to plan participants, see *Aetna Health Inc.* v. *Davila*, 542 U. S. 200, 215 (2004), and have no doubt engendered substantial reliance interests on the part of plans and fiduciaries. Allowing what is really a claim for benefits under a plan to be brought as a claim for breach of fiduciary duty under §502(a)(2), rather than as a claim for benefits due "under the terms of [the] plan," §502(a)(1)(B), may result in circumventing such plan

———————
*Sensibly, the Court leaves open the question whether exhaustion may be required of a claimant who seeks recovery for a breach of fiduciary duty under §502(a)(2). See *ante,* at 4, n. 3.

terms.

I do not mean to suggest that these are settled questions. They are not. Nor are we in a position to answer them. LaRue did not rely on §502(a)(1)(B) as a source of relief, and the courts below had no occasion to address the argument, raised by an *amicus* in this Court, that the availability of relief under §502(a)(1)(B) precludes LaRue's fiduciary breach claim. See Brief for ERISA Industry Committee as *Amicus Curiae* 13–30. I simply highlight the fact that the Court's determination that the present claim may be brought under §502(a)(2) is reached without considering whether the possible availability of relief under §502(a)(1)(B) alters that conclusion. See, *e.g., United Parcel Service, Inc.* v. *Mitchell,* 451 U. S. 56, 60, n. 2 (1981) (noting general reluctance to consider arguments raised only by an *amicus* and not considered by the courts below). In matters of statutory interpretation, where principles of *stare decisis* have their greatest effect, it is important that we not seem to decide more than we do. I see nothing in today's opinion precluding the lower courts on remand, if they determine that the argument is properly before them, from considering the contention that LaRue's claim may proceed only under §502(a)(1)(B). In any event, other courts in other cases remain free to consider what we have not—what effect the availability of relief under §502(a)(1)(B) may have on a plan participant's ability to proceed under §502(a)(2).

# SUPREME COURT OF THE UNITED STATES

———————
No. 06–856
———————

## JAMES LARUE, PETITIONER *v.* DeWOLFF, BOBERG & ASSOCIATES, INC., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[February 20, 2008]

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, concurring in the judgment.

I agree with the Court that petitioner alleges a cognizable claim under §502(a)(2) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. §1132(a)(2), but it is ERISA's text and not "the kind of harms that concerned [ERISA's] draftsmen" that compels my decision. *Ante*, at 7. In *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134 (1985), the Court held that §409 of ERISA, 29 U. S. C. §1109, read together with §502(a)(2), authorizes recovery only by "the plan as an entity," 473 U. S., at 140, and does not permit individuals to bring suit when they do not seek relief on behalf of the plan, *id.*, at 139–144. The majority accepts *Russell's* fundamental holding, but reins in the Court's further suggestion in *Russell* that suits under §502(a)(2) are meant to "protect the entire plan," rather than "the rights of an individual beneficiary." *Ante*, at 4–8; see *Russell, supra,* at 142. The majority states that emphasizing the "entire plan" was a sensible application of §§409 and 502(a)(2) in the historical context of defined benefit plans, but that the subsequent proliferation of defined contribution plans has rendered *Russell's* dictum inapplicable to most modern cases. *Ante*, at 6–7. In concluding that a loss suffered by a participant's defined contribution plan

2       LaRUE *v.* DeWOLFF, BOBERG & ASSOCIATES, INC.

THOMAS, J., concurring in judgment

account because of a fiduciary breach "creates the kind of
harms that concerned the draftsmen of §409," the majority
holds that §502(a)(2) authorizes recovery for plan partici-
pants such as petitioner. *Ante*, at 7–8.

Although I agree with the majority's holding, I write
separately because my reading of §§409 and 502(a)(2) is
not contingent on trends in the pension plan market. Nor
does it depend on the ostensible "concerns" of ERISA's
drafters. Rather, my conclusion that petitioner has stated
a cognizable claim flows from the unambiguous text of
§§409 and 502(a)(2) as applied to defined contribution
plans. Section 502(a)(2) states that "[a] civil action may be
brought" by a plan "participant, beneficiary or fiduciary,"
or by the Secretary of Labor, to obtain "appropriate relief"
under §409. 29 U. S. C. §1132(a)(2). Section 409(a) pro-
vides that "[a]ny person who is a fiduciary with respect to
a *plan* . . . shall be personally liable to make good to such
*plan* any losses to the *plan* resulting from each [fiduciary]
breach, and to restore to such *plan* any profits of such
fiduciary which have been made through use of assets of
the *plan* by the fiduciary . . . ." 29 U. S. C. §1109(a) (em-
phasis added).

The plain text of §409(a), which uses the term "plan"
five times, leaves no doubt that §502(a)(2) authorizes
recovery only for the plan. Likewise, Congress' repeated
use of the word "any" in §409(a) clarifies that the key
factor is whether the alleged losses can be said to be losses
"to the plan," not whether they are otherwise of a particu-
lar nature or kind. See, *e.g.*, *Ali* v. *Federal Bureau of
Prisons*, *ante*, at 4 (noting that the natural reading of
"any" is "one or some indiscriminately of whatever kind"
(internal quotation marks omitted)). On their face,
§§409(a) and 502(a)(2) permit recovery of *all* plan losses
caused by a fiduciary breach.

The question presented here, then, is whether the losses
to petitioner's individual 401(k) account resulting from

THOMAS, J., concurring in judgment

respondents' alleged breach of their fiduciary duties were losses "to the plan." In my view they were, because the assets allocated to petitioner's individual account were plan assets. ERISA requires the assets of a defined contribution plan (including "gains and losses" and legal recoveries) to be allocated for bookkeeping purposes to individual accounts within the plan for the beneficial interest of the participants, whose benefits in turn depend on the allocated amounts. See 29 U. S. C. §1002(34) (defining a "defined contribution plan" as a "plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account"). Thus, when a defined contribution plan sustains losses, those losses are reflected in the balances in the plan accounts of the affected participants, and a recovery of those losses would be allocated to one or more individual accounts.

The allocation of a plan's assets to individual accounts for bookkeeping purposes does not change the fact that all the assets in the plan remain plan assets. A defined contribution plan is not merely a collection of unrelated accounts. Rather, ERISA requires a plan's combined assets to be held in trust and legally owned by the plan trustees. See 29 U. S. C. §1103(a) (providing that "all assets of an employee benefit plan shall be held in trust by one or more trustees"). In short, the assets of a defined contribution plan under ERISA constitute, at the very least, the sum of all the assets allocated for bookkeeping purposes to the participants' individual accounts. Because a defined contribution plan is essentially the sum of its parts, losses attributable to the account of an individual participant are necessarily "losses to the plan" for purposes of §409(a). Accordingly, when a participant sustains losses to his

4          LaRUE *v.* DeWOLFF, BOBERG & ASSOCIATES, INC.

THOMAS, J., concurring in judgment

individual account as a result of a fiduciary breach, the plan's aggregate assets are likewise diminished by the same amount, and §502(a)(2) permits that participant to recover such losses on behalf of the plan.*

———————

*Of course, a participant suing to recover benefits on behalf of the plan is not entitled to monetary relief payable directly to him; rather, any recovery must be paid to the plan.